Anthony Dean Jackson
256 South Robertson Blvd. Apt. 1029
Beverly Hills, California 90211
adjaxsen@aol.com
1(310) 256-4832



# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ANTHONY DEAN JACKSON,<br>Plaintiff, | CASE NO.<br>**CIV '07 1404 PHX NVW** |
| VS. | CIVIL RIGHTS COMPLAINT<br>AND DEMAND FOR TRIAL<br>BY JURY |
| MARICOPA COUNTY PUBLIC<br>DEFENDER'S OFFICE<br>Defendant. | |

## JURISDICTION

This Court has jurisdiction over this action pursuant to: TITLE II OF THE AMERICANS WITH DISABILITIES ACT : Plaintiff is regarded as being seriously mentally ill (Level 5 Sex Offender)

I

## PREVIOUS LAW SUITS/APPEALS

1. ARIZONA SUPREME COURT DECISION = REVIEW DENIED JUNE 26, 2007 ; NO. CR -07-0086 PR .

2. ARIZONA SUPREME COURT PETITION FOR REVIEW FILED = MARCH 29, 2007; NO. 1CA- CR 06-0305 PRPC.

3. ARIZONA COURT OF APPEALS DECISION = REVIEW DENIED MARCH 19, 2007; NO. 1CA -CR 06-0305 PRPC.

4. ARIZONA COURT OF APPEALS DECISION = MOTION DENIED FEBRUARY 8, 2007; NO. 1CA-CR 06-0305 PRPC.

5. MARICOPA SUPERIOR COURT MINUTE ENTRY = DISMISSED (WITHOUT PREJUDICE) JUNE 21, 2007; NO. CV 2006- 013697.

6. MARICOPA SUPERIOR COURT MINUTE ENTRY = MOTION TO AMEND; NOTICE OF CLAIM; AND CIVIL COMPLAINT= DENIED JUNE 14, 2007; NO. CV 2006- 013697.

## EXHIBITS

**EXHIBIT 1** = PHOENIX POLICE DEPT. CRIME SCENE PHOTO 8/21/95 ......... 2
**EXHIBIT A** = MADISON ST. JAIL INJURY REPORT 9/13/95 ....................... 3
**EXHIBIT B** = CENTRAL UNIT INJURY REPORT 2/22/99 ........................... 3

**EXHIBIT C** = SMU 1 DISCIPLINARY APPEAL = DENIED 10/6/06 ................ 3

**EXHIBIT D** = PSYCHIATRIC REPORT 8/2/97 ............................................. 3
**EXHIBIT E** = PSYCHIATRIC REPORT - Winter 1996/97 .............................. 3

**EXHIBIT 07-001844** = LOS ANGELES POLICE DEPT. RESPONSE 4/19/07 ...... 3

**EXHIBIT F** = CEDARS SINAI - MOVE VEHICLE/PAY FEES 1/17/06 .............. 4
**EXHIBIT G** = JOHNSON'S SUPER SERVICE - TOW/STORAGE FEE 3/6/06 .... 4
**EXHIBIT H** = JOHNSON'S APPLICATION FOR LIEN SALE 3/6/06 ................ 4
**EXHIBIT I** = PLAINTIFF'S PROOF OF OWNERSHIP/PURCHASE ............... 4
**EXHIBIT J** = JOHNSON'S NOTICE OF STORED VEHICLE 3/3/06 ................ 4

# COUNT I

1. The following constitutional or other federal civil right has been violated by the defendant(s):
   A. The 5th, 6th, and 14th Amendments (Due process, Effective Assistance & Equal Rights)
   B. Title II of the ADA : Section 12131 (1)(2) & 12132

2. **Count I Involves : Legal Malpractice**

3. **Supporting Facts :** In March 1996, a jury found the plaintiff guilty of kidnapping and *sexual abuse after viewing a police videotaped interrogation where he admits to a kiss on the victim's breast. He and the victim had also violated A.R.S. Sections 13-3214 and 13-1409 which prohibits _prostitution_, and _open and notorious cohabitation_, class 1 and 3 misdemeanors. However, these violations and the pregnancy are not mentioned in the videotape, nor was it mentioned during trial, nor did the plaintiff testify. *(A.R.S. Section 13-1404)

The reason why the plaintiff did not testify, and why these issues were not raised during trial, by defense counsel, is because counsel was ignorant of the facts. At page 4, in the March 20, 1996, trial transcripts, counsel argued that this case was about *"kinky sexual habits."* Counsel arrived at this erroneous conclusion after deposing Mr. Joey Thrower who assumed that the victim was into the *"pain thing"* after she dug her nails into his back during sexual intercourse.

However, the reason the plaintiff had asked counsel to contact his next door neighbor, Mr. Thrower, is because counsel could not believed that police would file a false report. But police did not file a false report. Det. Hutson simply took statements without investigating them. His report shows he only talk to, and left business cards with, the victim's friends and neighbors.

The victim never told police that she was living with the plaintiff in May 1995, in his apart-ment, and from June 1995 to August 1995, in her apartment, nor that he previously raped her. Instead, she claimed she hardly knew her attacker, who lived with her for 2 weeks, and that he was definitely not her roommate. The age gap and racial disparity gave this story credibility.

Her friend, Ms. Diana Caban, corroborated her story and told police that the plaintiff was an out of town visitor from California who let the victim use his car whenever he came to Phoenix in exchange for a place to stay. However, the report also shows that the plaintiff left his apartment in June 1995, the same month the victim leased her apartment. (See 55 pg. Report - Dr. No. 51409944)

In August 1995, the victim discovered she was pregnant. However, she claimed that Mr. Lonnie Davis was the father, not the plaintiff. But the fact that Mr. Davis refuse to corroborate her claim, or testify, could imply that he had doubts about the victim's fidelity and concerns that he would be questioned about her injuries that were too old to have been caused by the plaintiff.

1.

*A Motion for Change of Counsel was filed, but denied after counsel argued she was being fired on the basis of her race. Judge Topf then allowed the plaintiff to represent himself, but counsel was rehired in Judge Gerst's court after the State argued it did not want him asking the victim questions or cross examining her on the witness stand. (Mar. 14, 1996, pg. citing omitted)*

It was counsel's intention to argue, as a defense, that the plaintiff and the victim were engaging in *"kinky rough sex."* This, supposedly, explains her injuries, her rape claim, and the breast kiss, but the victim's testimony, during trial, indicates they were fighting over a proposed sexual relationship with her best friend, Mrs. Sandy Encinas-Ruiz, and his refusal to let her use his car.

After the victim refused to arrange a *"threesome"* the plaintiff got angry, then left her a threatening letter* and went to bed. The victim testified she put the letter in the cupboard, then told the plaintiff that he had to move. Police found his belongings on the living room floor, and his clothes were gone. But instead of helping him move, she decides she needs to use his car. Had he let her use his car, the letter and drug abuse would not have been mentioned to police. (Mar. 21, 1996 at 79).
*A threatening letter is a class 2 misdemeanor, A.R.S. Section 13-3004.*

As it happens, the trial court precluded the *"kinky rough sex"* defense and Mr. Thrower's sexual encounter with the victim. Counsel could have motioned for a continuance to put together another defense, but again, she was ignorant of the facts and unwilling to accept the fact that she was ignorant as indicated by her racist response to the plaintiff's change of counsel motion.

The fact is, there was no reason to have a trial without a defense because counsel could have argued that both the plaintiff and the victim had violated A.R.S. Sections 13-1409. and 13-3214, which prohibits open and notorious cohabitation and prostitution.

These violations are supported by the following facts : 1) The plaintiff and the victim were living together for no other reasons but to indulge in drugs, alcohol, and fornication; and 2) The victim has a habit of having live-in sexual relationships for no other reasons but to avoid having to use public transportation, and receive gifts. (Mar. 19, 1996, 58-59). (See also *Exhibit 1 Crime Scene Photo*)

The plain fact is, the plaintiff is no Denzel Washington, but he has discovered that he can have sexual relationships with young attractive women if he is willing to pay their price. As it happens, the victim received an offer she could not refuse and despite the fact she claims the plaintiff previously raped her. (Mar. 21, 1996, 143-145).

2.

**4. INJURY :** Count II, in the Indictment, depicts a heinous tale about a Black man living in his car and getting liquored-up while he waits for it to get dark. He then broke into a pregnant White woman's apartment whom he met at work several months earlier. He beat her, tore off all her clothes, then dragged her body into her bedroom where he licked and rubbed her vagina while he inserted his fingers into her anus. She was threatened and raped three more times before he decided to take a break to go buy more alcohol and some after sex cigarettes.

Police arrested this predator as he was about to enter the victim's apartment a second time. She was rushed to Phoenix Baptist Hospital where she miscarried. But the sad part of it is, the monster who raped her and murdered her baby will be released back into the community to rape and kill again before "John Doe" gets out who only had a few dime rocks.

Although the plaintiff was convicted of a breast kiss, this is the story that ADOC and third parties have adopted to justify his Level 5 Sex Score and the mental and physical abuse they inflicted. In fact, the plaintiff left Phoenix immediately after his release out of fear for his safety.

In September 1995, the plaintiff was rescued by sheriff's deputies after I/M Chris Boyd beat and kicked him. He was treated for injuries to his head and body. (Exhibit A)

In February 1999, he was treated for second degree burns on his neck and shoulder after I/M Fred Bradey threw a hot substance on him. (Exhibit B)
The plaintiff only lasted 90 days at Winslow, and within 6 months youngsters wanting to earn their stripes chased him away from Rincon and Cimarron.

In October 2006, he was penalized for urinating on the floor, but nothing was done to C/O Cox who left him in a holding cage for over 4 hours without a toilet or water. (Exhibit C )

Doctors at Flamenco Mental Hospital told him that he needed to accept the fact that threats and assaults would be a chronic problem when he asked to be placed in protective segregation and told of a conspiracy in Phoenix. Yet, ADOC claims that the reason they did not transfer his parole to Los Angeles is because he never told any one there was a problem in Phoenix. But checking psychiatric records before releasing a sex offender is only common sense. (Exhibits D & E)

In October 2005, the plaintiff sought treatment for Hepatitis C at Cedars Sinai Hospital and was arrested by plain clothes LAPD officers, with an absconding warrant, as he reached for his wallet in his rear pocket to pay his bill. The struggle over possession of his wallet caused the injury to his tooth that had to be removed at the LA county Jail. *(See 4/19/07 Letter CF No. 07-001844).*

3.

A conditions of release agreement that puts ones life in imminent danger is nonbinding; therefore, an arrest warrant obtained with it is invalid. In March 2006, Cedars had the plaintiff's $27,000. Jeep towed away by Johnson's Super Service who sold it to recover their $297.00 towing and storage fee, and did not refund the difference. But because Cedars had assisted police, who had an invalid warrant, asking for late parking fees, then having the Jeep towed is absurd. (Exhibits F, G, H, I & J)

It was raining on February 11, 2007, the day that ADOC left the plaintiff at the Grey Hound bus station wearing nothing but a shirt, pants, and size 10 shower shoes on size 13 feet. His feet were black and bloody by the time he reached the CASS Shelter. Chaplain Dave Goodall gave the plaintiff a bus ticket home to Los Angeles and a pair of thick socks.

His mom had passed away in May 2003. So DPSS found him a place to live. Defense counsel sent her condolences, but the plaintiff mailed the card back to her for the following reasons :

*"but nothing was done to C/O Cox who left him in a cage for over 4 hours"*

This Exhibit C excerpt defines the *Status Quo* at all levels in the Arizona judicial system for the past 10 years. There is no accountability. After the plaintiff dismissed his ineffective assistance claim against defense counsel, the attorney general's office saw it as an opportunity to have the first habeas petition dismissed. But its intent was to allow counsel to rectify her ignorance without being penalized, not evade the issue. The lack of accountability made her condolences seem insincere. It also raises doubts about any Court's willingness to make calls that could put a strain on relationships with colleagues. But a jury trial, though expensive, could relieve some of the strain.

## REQUEST FOR RELIEF

*Nevertheless, the plaintiff brought this on himself, and he has served his time. The only questions before the jury are whether 9.25 years for a breast kiss, <u>under these circumstances</u>, was an abuse of the trial court's discretion, and ineffectiveness of counsel. Plaintiff seeks $5,000,000. in compensatory and punitive damages for: Lost Wages, 2005 Jeep Cherokee, Libel & Slander, Pain & Suffering, and Racial Discrimination. Plus, court and legal research fees. In addition, Defense, Appellate, and PCR Counsel should reimburse the State or County the money they received for research that was never done, but is a significant part of their duties.*

I declare under penalty of perjury that the foregoing is true and correct.

Executed on <u>July 23, 2007</u>                                   by <u>/s/ Anthony D. Jackson</u>

## SUMMARY

The plaintiff argued that the Maricopa County Public Defender's Office lacks staff and funding to adequately represent defendants. These conclusions are supported by the following facts :

1. The plaintiff was arrested on Augst 21, 1995. It was 60 days later, in mid October 1995, when he saw defense counsel for the first time. But this meeting was spent trying to erase counsel's doubts and suspicions because she could not believe that police would file a false report. (at pg 1)

2. It was 6 months after the plaintiff's arrest, and 30 days before trial, when counsel started preparing a defense with Mr. Thrower's February 1996 *"pain thing"* deposition.

3. Based on these time frames, and counsel's actions, it appears that : 1) She had more defendants than she could handle; and 2) She was relying on the police to do her research because she neither had the time nor the funding to conduct her own independent investigation from square one.

4. Another questionable practice is preparing appeals by mailing defendants a questionnaire asking them what issues they believe should be raised in their appeals!?! The plain fact is, it took the plaintiff several years of research and experimenting in the courts before he was able to comprehend the law on a college freshman's level. In fact, his chances of getting any relief in this case are doubtful unless he finds a lawyer willing to take legal action against fellow colleagues.

However, in order to raise the issues, herein, appellate counsel would have had to : 1) Provide the plaintiff with a copy of the trial transcripts for review; and  2) Ask the plaintiff to read relevant cases: *Paul Gregory House v. Ricky Bell, Warden, 547 U. S. ___  (2006); Stevens v. Anderson, 256 P.2d 712, 715; and Strickland v. Washington, 466 U. S. 668 (1984).*

But expecting to present meaningful issues on appeal by mailing a questionnaire, alone, to a defendant you have never seen nor met and have no clue as to the extent of their legal education could only mean two things: 1) Appellate counsel also has more cases than he can handle; and 2) He was relying on defense counsel to do his research because he had neither the time nor the funding to conduct his own independent investigation from square one.

5. Attorney Lisa Martin was suppose to present the issues herein in the plaintiff's first Rule 32, but she told the trial court she could not find any issues to raise. Again, she also made the mistake of using a questionnaire to make an assessment to prepare important documents.

She probably has nothing to do with MCPDO, but when a detective, 3 lawyers, a prosecutor, and a trial judge cannot do research it suggests that they have more cases than they can handle, and they are hoping that some one else will do their research. In regards to MCPDO's *"kinky rough sex"* defense, an old , blind, 3 legged watchdog, without teeth, could have put up a better fight.

5.

## CERTIFICATE OF SERVICE

I hereby certify that the original of the foregoing document, two copies, and a $350.00 filing fee was mailed this 23rd day of July, 2007, to :

Richard H. Weare - Clerk of the Court
Sandra Day O'Connor U.S. Courthouse
401 W. Washington Street
Suite 130, SPC 1
Phoenix, Arizona 85003-2118


by /s/ Anthony D. Jackson
    Plaintiff  Pro Se


## REQUEST TO USE ELECTRONIC CASE FILING

THE PLAINTIFF HAS THE NECESSASARY HARD/SOFTWARE TO PRESENT HIS CASE USING THE COURT'S ECF AND HE HAS OPENED A PACER ACCOUNT. HE HAS ALSO USED MARICOPA SUPERIOR COURT'S EFILING SYSTEM.

Respectfully submitted this 23rd day of July, 2007.
by /s/ Anthony D. Jackson
Plaintiff  Pro se